UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| NEW ENGLAND BIOLABS, INC., <br><br> Plaintiff, <br><br> v. <br><br> RALPH T. MILLER, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) DOCKET NO. _____ <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

# COMPLAINT

Plaintiff New England Biolabs, Inc. ("Plaintiff or NEB") brings this Complaint against Ralph T. Miller ("Defendant") for unjust enrichment in the amount of $164,580.17.

## INTRODUCTION

1. NEB brings this litigation to recoup certain funds paid to a former employee – Defendant Ralph T. Miller. As more fully explained below, due to an administrative oversite, the funds in question – $164,580.17 – were improperly paid to the Defendant.

2. Prior to bringing this litigation, the Plaintiff contacted the Defendant on several occasions – both individually and through Defendant's counsel - informing him of the error and requesting the return of such funds. Unfortunately, Mr. Miller has refused to return these funds leaving NEB with no alternative but to seek reimbursement through litigation.

## PARTIES

3. NEB is a corporation organized under the laws of the Commonwealth of Massachusetts. NEB's principal place of business is Ipswich, Massachusetts.

9666423v7

4. Defendant is a citizen of the United States who resides in Essex County, Massachusetts.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Plaintiff's claim arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(3)(B) and federal common law.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1, 2) because the Defendant resides in this district and because a substantial part of the events giving rise to the claim occurred in this district.

## STATEMENT OF FACTS

7. NEB is a named fiduciary of New England Biolabs, Inc.'s Employees' Stock Ownership Plan and Trust ("the ESOP" or "the Plan").  NEB established the ESOP in 1985 and has maintained the ESOP for the benefit of its employees and their beneficiaries since that time. In 2013, NEB amended the ESOP and restated the ESOP as a profit sharing plan. The ESOP's assets include: 48% NEB Voting stock, 42% NEB Non-Voting stock, and 10% cash and other stock.  The ESOP complies with all relevant provisions of ERISA.

8. Employee participants in the ESOP have two accounts: the Participant's Dollar Account and the Participant's Employer Stock Account.  Participants in the ESOP receive cash distributions from both of these accounts upon termination of their employment or retirement.  The ESOP provides that if a plan participant receives a distribution of his Employer Stock Account in cash, the amount will be based upon the valuation as of the last day of the Plan Year preceding the date of the participant's termination of employment. Exhibit 1 at subsection 8.3(a)(i). The ESOP

does not permit a plan participant to defer his distribution if the plan participant is age 65 or older at the time the participant terminates employment. *Id*. at subsection 8.3(b)(i).

9. Principal Financial Services, Inc. ("Principal") is, and was at all relevant times, the third-party administrator of the ESOP.

10. The Defendant worked at NEB as a Receiving Clerk for 17 years.

11. On May 8, 2002, Mr. Miller was enrolled in the ESOP.

12. On September 29, 2017, Mr. Miller retired from NEB at the age of 67.

13. On or around October 20, 2017, Principal mailed Mr. Miller three documents regarding Mr. Miller's distribution of his vested interest in the ESOP – the Distribution Notice, the Diversification Form, and the Distribution/Rollover Election Form (attached hereto as Exhibits 2, 3 and 4).

14. As stated on the Distribution Notice, Mr. Miller was required to elect how to receive his distribution. Mr. Miller had the option to: 1) move the funds to an Individual Retirement Account ("IRA"); 2) roll the funds to another employer's retirement plan; or 3) take the funds in cash. Mr. Miller was required to make an election by November 24, 2017.

15. Mr. Miller neglected to respond to Principal's October 2017 notice and forms.

16. In August 2018, Principal once again mailed the ESOP Distribution Notice and forms to all former and recently terminated participants of the ESOP, including Mr. Miller.

17. On or around August 20, 2018, Mr. Miller returned the forms to Principal and elected to defer his distribution. Mr. Miller's ESOP Distribution/Rollover Election Form states: "I understand that I must receive a full distribution of my ESOP account at age 65 (either in cash or in shares), and that, between now and then, I have limited opportunities to receive a distribution

from my Plan Accounts." Exhibit 4.  Mr. Miller did not sign the ESOP Distribution/Rollover Election Form, though he did check the box indicating that he elected to defer his distribution.  *Id*.

18. On or around August 20, 2018, Mr. Miller also elected to not diversify a portion of the employer securities held in his ESOP account.  The Diversification Form states: "You are eligible to diversify 25% of the NEB Voting shares of stock allocated to your account….you can elect to receive the value of the following number of shares[:] 23.036325 Shares of Company Stock for $8,682.39." Exhibit 3.  Mr. Miller did sign and date the Diversification Form.  *Id*.

19. In August 2019, NEB adopted an amendment to the ESOP stating that former employees will no longer be allowed to hold NEB stock in their ESOP accounts and the participant's option to require purchase by the employer will be limited to the time periods required by ERISA.  This amendment made no other relevant changes to the ESOP.  The changes made by this amendment were summarized in a Summary of Material Modifications that was distributed by NEB to all plan participants, including plan participants who were no longer actively employed by NEB.  This Summary of Material Modifications is attached hereto as Exhibit 5.

20. On September 9, 2019, Mr. Miller elected to rollover his ESOP account to his IRA.

21. On September 30, 2019, the funds in Mr. Miller's ESOP account were distributed in the form of a direct rollover to Mr. Miller's IRA.  The amount of the direct rollover was $783,823.39.  The distribution amount was based on the valuation of NEB stock as of September 30, 2018, the most recent valuation of NEB stock prior to Mr. Miller's rollover election.

22. In October 2019, NEB conducted an internal review of recent distributions under the ESOP.  The internal review revealed that due to an administrative oversight, Mr. Miller's distribution was significantly higher than it should have been.

23. Under the terms of the ESOP, Mr. Miller should have received his distribution no later than November 28, 2017, which is the date that is sixty days after the end of the plan year in which Mr. Miller retired. Further, pursuant to the terms of the ESOP, the value of that distribution should have been based on the value of NEB stock as of September 30, 2016, the last day of the plan year preceding Mr. Miller's retirement. The value of the NEB stock in Mr. Miller's account as of that date was $563,968.22, $219,855.17 less than the $783,823.39 he ultimately received.

24. Mr. Miller caused his distributions to be delayed until 2019 because he continued to submit deferral elections that were contrary to the terms of the ESOP, which does not permit a plan participant who terminates employment on or after age 65 to defer distributions.

25. NEB has determined that the delay Mr. Miller caused by submitting defective deferral elections resulted in the ESOP being operated contrary to its terms. Under the Internal Revenue Service's correction program for tax-qualified retirement plans, the Employee Plans Compliance Resolution System ("EPCRS"), an operational failure must be corrected by restoring the ESOP to the position it would have been in had the operational failure not occurred.

26. Restoring the ESOP to the position it would have been in if this operational failure had not occurred would generally require Mr. Miller to restore the full amount of his overpayment, $219,855.17, to the ESOP. However, because Mr. Miller received his distribution approximately two years after he retired, EPCRS also provides that Mr. Miller should be credited with investment earnings on the correct amount of his distribution, $563,968.22, from November 28, 2017, the date by which Mr. Miller should have received his distribution, through September 30, 2019, the date of Mr. Miller's actual distribution.

27.     The EPCRS guidance provides that the interest rate used by the Department of Labor's Voluntary Fiduciary Correction Program Online Calculator is deemed to be a reasonable proxy for investment earnings.

28.     Based on the Department of Labor's Online Calculator, investment earnings on Mr. Miller's correct distribution of $563,968.22 would be $55,275.00 between November 28, 2017 and September 30, 2019.  Thus, Mr. Miller's correct distribution amount would be $619,243.22 ($563,968.22 plus $55,275.00).

29.     Based on these calculations, Mr. Miller was overpaid $164,580.17 ($783,823.39 minus $619,243.22).

30.     In the event of an overpayment, the EPCRS guidance provides that an employer must notify the plan participant that the overpayment is not eligible for tax-deferred rollover treatment and the overpayment must be removed from the plan participant's IRA as soon as possible.  The EPCRS guidance also requires an employer to take reasonable steps to have the overpayment repaid to the ESOP.

31.     NEB immediately contacted Mr. Miller to inform him of the mistaken overpayment.  On January 16, 2020, NEB requested repayment of $164,580.17 to the ESOP by January 31, 2020 in order to restore the ESOP to the position it would have been had the overpayment not occurred.  NEB informed Mr. Miller that it would not require the repayment amount to be further adjusted for lost investment earnings by the ESOP as long as Mr. Miller repaid the amount promptly.  Exhibit 6.

32.     Instead of returning the money that belonged to the ESOP, on January 29, 2020, Mr. Miller, through his counsel, requested all documentation regarding Mr. Miller's overpayment. Mr. Miller also requested: 1) the names of any other individuals who were overpaid; 2) all written

communications with the IRS regarding the overpayment to Mr. Miller and any other individuals; and 3) "[a]ll legal analysis that the Plan may have received in concluding that Mr. Miller owes money to the Plan." Exhibit 7.

33. On February 13, 2020, NEB responded to Mr. Miller and informed him that: 1) there were no similarly situated individuals that have been overpaid by the ESOP; 2) that NEB has not yet communicated with the IRS regarding the overpayment but would issue a Form 1099-R to Mr. Miller indicating that the overpayment of $164,580.17 is taxable; and 3) that NEB's legal analysis was included in its prior letter.

34. On February 14, 2020, NEB informed Mr. Miller that if he repaid the $164,580.17, it would issue an amended 1099-R reducing the $164,580.17 overpayment to $0. NEB attached the Form 1099-R to the letter it sent to Mr. Miller. Exhibit 8.

35. On February 28, 2020, NEB sent a letter to Morgan Stanley, the custodian of Mr. Miller's IRA, advising them that due to an administrative error, Mr. Miller received an excess distribution that must be repaid to the Plan.

36. As of the date of this complaint, Mr. Miller has refused to return the $164,580.17 that belongs to the ESOP.

## COUNT I
## EQUITABLE RELIEF UNDER ERISA, 29 U.S.C. § 1132(a)(3)(B)

37. Plaintiff incorporates by reference Paragraphs 1 through 36 as if set forth fully herein.

38. 29 U.S.C. § 1132(a)(3)(B) authorizes "a participant, beneficiary, or fiduciary…to obtain other appropriate equitable relief (i) to redress such violations [of the plan] or (ii) to enforce any provisions of this title or the terms of the plan[.]"

39. Plaintiff is a fiduciary of the ESOP.

40. Mr. Miller has wrongfully and knowingly retained $164,580.17 mistakenly overpaid to him by the ESOP. This money properly belongs to the ESOP and all participants in the ESOP.

41. As a result, Plaintiff requests "appropriate equitable relief" pursuant to $164,580.17 to make the ESOP and the participants in the ESOP whole again.

## COUNT II
## UNJUST ENRICHMENT

42. Plaintiff incorporates by reference Paragraphs 1 through 41 as if set forth fully herein.

43. Mr. Miller received a benefit from the Plaintiff, as a fiduciary of the ESOP, in the form of the $164,580.17 overpayment from his ESOP account to his IRA.

44. Despite the fact that NEB promptly notified Mr. Miller of the overpayment error, Mr. Miller has wrongfully retained the $164,580.17 for his own benefit and continues to refuse to repay the ESOP.

45. Mr. Miller has been unjustly enriched at the expense of the ESOP and ESOP participants by refusing to return the $164,580.17 overpaid to him by the ESOP.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered in its favor for:

1. "Appropriate equitable relief" in the amount of $164,580.17 under ERISA, 29 U.S.C. § 1132(a)(3)(B);

2. Unjust enrichment in the amount of $164,580.17; and

3. Such other and further legal or equitable relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury of all claims so triable.

Dated: June 26, 2020

        Respectfully Submitted,

        */s/Michael H. Bunis*
        Michael H. Bunis (BBO No. 566839)
        Ramya S. Vallabhaneni (BBO No. 698608)
        **CHOATE HALL & STEWART LLP**
        Two International Place
        Boston, MA 02110
        Tel: 617.248.5000
        mbunis@choate.com
        rvallabhaneni@choate.com