**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| NEW ENGLAND BIOLABS, INC., <br><br> Plaintiff, <br><br> v. <br><br> RALPH T. MILLER, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No. 20-cv-11234-DJC |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                 **November 23, 2020**

**I.    Introduction**

Plaintiff New England Biolabs, Inc. ("NEB") has filed this lawsuit against Ralph T. Miller ("Miller") seeking equitable relief pursuant to 29 U.S.C. § 1132(a)(3)(B) in connection with Miller's receipt and retention of an overpayment from NEB's Employees' Stock Ownership Plan ("ESOP" or the "Plan") (Count I).  NEB has also asserted claims against Miller for breach of fiduciary duty, pursuant to 29 U.S.C. § 1132(a)(2) (Count II), and unjust enrichment (Count III).  D. 20.  NEB now moves for a preliminary injunction to maintain the status quo with respect to the overpayment (i.e., that Miller be enjoined from transferring, assigning, pledging, encumbering, concealing, dissipating or diminishing the $164,580.17 overpayment received from the ESOP) while the current litigation is pending.  D. 21.  In response, Miller has moved to dismiss NEB's claims.  D. 24.  For the reasons discussed below, the Court ALLOWS the motion for preliminary injunction, D. 21, DENIES the motion to dismiss as to Counts I and II and ALLOWS the motion to dismiss as to Count III, D. 24.

1

**II.     Standard of Review**

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted).  Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry.  García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id.  Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Id.  Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the conduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted).  In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (citation omitted).

Preliminary injunctive relief "is an 'extraordinary and drastic remedy.'" Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011) (quoting Munaf v. Geren, 553 U.S. 674, 689-90 (2008)).  Its purpose is "to preserve the status quo so that upon full adjudication on the merits the district court can more effectively remedy any discerned wrongs." Chiara v. Dizoglio, 59 F. Supp. 2d 193, 196 (D. Mass. 1999) (noting that "a preliminary injunction that has the effect of disturbing, rather than preserving, the status quo 'normally should be granted only in those circumstances when the exigencies of the situation demand such relief'"). To obtain a preliminary injunction, the Court must consider:  (1) the movant's likelihood of success on the merits; (2) the risk of the movant suffering irreparable harm in the absence of injunctive relief; (3) the balance of equities; and (4) whether granting the injunction is in the

public interest. Corp. Techs., Inc. v. Harnett, 731 F.3d 6, 9 (1st Cir. 2013). Likelihood of success on the merits is the "main bearing wall of this framework." W Holding Co. v. AIG Ins. Co.-Puerto Rico, 748 F.3d 377, 383 (1st Cir. 2014) (quoting Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 16 (1st Cir. 1996)) (internal quotation marks omitted). Irreparable harm, on the other hand, is measured "on a sliding scale, working in conjunction with a moving party's likelihood of success on the merits, such that the strength of the showing necessary on irreparable harm depends in part on the degree of likelihood of success shown." Gedeon v. City of Springfield, No. 16-cv-30054-MGM, 2017 WL 4212334, at *8 (D. Mass. Feb. 24, 2017) (quoting Braintree Labs., Inc. v. Citigroup Glob. Mkts., Inc., 622 F.3d 36, 42-43 (1st Cir. 2010)). The movant "bears the burden of establishing that these four factors weigh in [its] favor." Esso Standard Oil Co. (P.R.) v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006).

**III.     Factual Background**

The following facts are drawn from the amended complaint, D. 20, and Miller's affidavit, D. 27. NEB is a named fiduciary of the ESOP and maintains the Plan for the benefit of its employees and their beneficiaries. D. 20 ¶ 7. In 2013, NEB amended the ESOP and restated it as a profit-sharing plan. Id. The ESOP established a Trust Fund, administered by the Trustees of the ESOP (the "Trustees"), that holds all assets on behalf of its employee participants. Id. ¶ 8. Employee participants in the ESOP have a Participant's Dollar Account and a Participant's Employer Stock Account. Id. ¶ 11. Once a participant terminates his employment or retires, the participant receives cash distributions from both accounts. Id. Pursuant to the ESOP, if a plan participant receives a distribution of his Employer Stock Account in cash, the amount will be based upon the valuation of the stock as of the last day of the Plan Year preceding the date of the participant's termination of employment. Id. The ESOP does not permit a plan participant to

defer his distribution if the participant is over 65 years of age at the time the participant terminates his employment. Id. Principal Financial Services, Inc. ("Principal") is the third-party administrator of the ESOP. Id. ¶ 12.

Miller worked at NEB as a Receiving Clerk for seventeen years and was enrolled in the ESOP. Id. ¶¶ 13-14; D. 27 ¶¶ 5-6. He retired from NEB on September 29, 2017 when he was 67 years old. D. 20 ¶ 15; D. 27 ¶ 7. On or around October 29, 2017, Principal mailed Miller documents regarding Miller's distribution of his vested interest in the ESOP, including a Distribution Notice, Diversification Form and a Distribution/Rollover Election Form. D. 20 ¶ 16. The Distribution Notice stated that Miller was required to elect how he would like to receive his distribution from the ESOP. Id. ¶ 17. His options included: (1) moving the funds to an Individual Retirement Account ("IRA"), (2) rolling the funds to another employer's retirement plan, or (3) taking the funds in cash. Id. Miller failed to respond by the deadline of November 24, 2017. Id. ¶ 18. Principal and NEB sent Miller the Distribution Notice and additional forms again in August 2018. Id. ¶ 19. At the time, Principal mailed the forms to all former and recently terminated ESOP participants. Id. Following the August 2018 mailing, on or around August 20, 2018, Miller returned the forms to Principal and elected to defer his distribution. Id. ¶ 20. He also elected to not diversify a portion of the employer securities held in his ESOP account. Id. ¶ 21. According to Miller, earlier in February 2017, prior to his retirement, Brian Tinger ("Tinger"), a controller at NEB, told Miller that he did not need to cash-out upon retirement. D. 27 ¶¶ 9-11. Miller states that he did not seek a cash-out based upon Tinger's representations. Id. ¶ 12.

In August 2019, NEB adopted an amendment to the ESOP, stating that former employees would no longer be allowed to hold NEB stock in their ESOP accounts and the participants' option to require purchase by the employer would be limited to the time periods required by the

Employment Retirement Income Security Act of 1974 ("ERISA"). D. 20 ¶ 22; D. 27 ¶¶ 15-16. On September 9, 2019, in response to the NEB amendment, Miller elected to rollover his ESOP account to his IRA. D. 20 ¶ 23; D. 27 ¶ 17. On September 30, 2019, funds in the amount of the presumed value of Miller's ESOP account were ascribed to Miller's ESOP account. D. 20 ¶ 24. The direct rollover amount was $783,823.39, which was based on the valuation of NEB stock as of September 30, 2018—the most recent valuation of NEB stock prior to Miller's rollover election. Id. Miller was mistakenly overpaid $164,580.17 and should have received a $563,968.22 distribution. Id. A month later, in October 2019, NEB conducted an internal review of recent distributions under ESOP and discovered the error as to the payment to Miller. Id. ¶ 25. Pursuant to the ESOP's terms, Miller should have received his distribution no later than November 28, 2017, sixty days after the end of the plan year in which Miller retired, and the value of that distribution should have been based on the value of NEB stock as of September 30, 2016, the last day of the plan year preceding Miller's retirement. Id. ¶ 26.

On January 16, 2020, NEB requested that Miller repay the $164,580.17 to the ESOP by January 31, 2020. Id. ¶ 34. NEB informed Miller that it would not require the repayment amount to be further adjusted for lost investment earnings by the ESOP if Miller repaid the amount promptly. Id. Miller has not returned the overpayment. Id. ¶ 35.

**IV.   Procedural History**

NEB filed this action against Miller on June 26, 2020. D. 1. On October 2, 2020, NEB filed an amended complaint, D. 20, and simultaneously moved for a preliminary injunction requesting that Miller be enjoined from transferring, assigning, pledging, encumbering, concealing, dissipating or diminishing the funds received from the ESOP up to the $164,580.17. D. 21. On October 19, 2020, Miller moved to dismiss the amended complaint under Fed. R. Civ.

P. 12(b)(6), D. 24.  The Court heard the parties on the pending motions and took the matters under advisement.  D. 35.

## V. Discussion

### A. Motion to Dismiss

#### 1. Equitable Relief (Count I)

NEB alleges that Miller violated the ESOP, thereby entitling NEB to equitable relief pursuant to 29 U.S.C. § 1132(a)(3)(B).  This provision permits a "participant or beneficiary" to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . ."  29 U.S.C. § 1132(a)(3)(B).  It is a "catch-all" provision that "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that [the statute] does not elsewhere adequately remedy."  Varity Corp. v. Howe, 516 U.S. 489, 512 (1996).  When bringing a suit under § 1132(a)(3) for monetary relief, a plaintiff must establish injury-in-fact.  See, e.g., Perelman v. Perelman, 793 F.3d 368, 373 (3d Cir. 2015) (noting that "claims demanding a monetary equitable remedy . . . require the plaintiff to allege an individualized financial harm traceable to the defendant's alleged ERISA violations"); Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C., 433 F.3d 181, 200 (2d Cir. 2005) (noting that "obtaining restitution or disgorgement under ERISA requires that a plaintiff satisfy the strictures of constitutional standing by 'demonstrat[ing] individual loss'") (internal citation omitted).

"At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'"  Lujan v. Defenders of Wildlife, 504

U.S. 555, 560–61 (1992) (internal citation omitted).  To establish injury-in-fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  Spokeo, Inc. v. Robins, __ U.S. __, 136 S. Ct. 1540, 1548 (2016) (quoting Lujan, 504 U.S. at 560).  "[I]ntangible injuries can nevertheless be concrete."  Id. at 1549.  However, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."  Id.  "Article III standing requires a concrete injury even in the context of a statutory violation."  Id.  "[W]rongfully retained or misused assets" can constitute a tangible harm, "even if no economic loss results."  Merrimon v. Unum Life Ins. Co. of Am., 758 F.3d 46, 53 (1st Cir. 2014).

Miller challenges NEB's standing under § 1132(a)(3) to bring this action, but NEB has made sufficient showing regarding same.  Here, as permitted under § 1132(a)(2), see Mass. Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 140 (1985) (holding that a participant's action brought pursuant to § 1132(a)(2) seek remedies that provide a "benefit [to] the plan as a whole"), NEB claims that the funds used to acquire Miller's stock, as referenced in the amended complaint, came from a cash account shared by all plan participants.  D. 29 at 4.  NEB further alleges that Miller was overpaid with funds held for the benefit of all plan participants, and thus, all plan participants were harmed.  Id.; see, e.g., Evans v. Akers, 534 F.3d 65, 74 (1st Cir. 2008) (holding that "losses to a plan" is a "concrete injury that is redressable by a court and falls within the scope of Article III standing" and that if the plaintiffs were ultimately successful in their suit, "the fiduciaries should, in accord with their statutory duty of care, strive to allocate any recovery to the affected participants in relation to the impact the fiduciary breaches had on their particular

accounts"); Moitoso v. FMR LLC, 410 F. Supp. 3d 320, 327 (D. Mass. 2019) (holding plaintiffs had standing to sue on behalf of the plan where "the Plaintiffs' claims d[id] not depend on [Defendant's] failure to turn over a set amount of money but on an assertion that [Defendant's] breach of fiduciary duty caused the Plan's income to diminish"). Although Miller disputes this characterization, such allegations amount to a loss of Plan assets, such that NEB and the plan participants it represents have suffered an injury-in-fact.

Miller contends that NEB still lacks standing as NEB is not authorized to file suit on behalf of the plan participants. D. 25 at 16-17. NEB, however, alleges that it is authorized by statute to assert claims pursuant to 29 U.S.C. § 1132(a)(3)(B), which authorizes a "participant, beneficiary, or fiduciary" to "obtain other appropriate equitable relief." 29 U.S.C. § 1132; see D. 20 ¶ 47. As NEB is a named fiduciary of the ESOP, see D. 20-1 § 11.1, NEB argues it is therefore authorized by statute to assert these claims. NEB states, moreover, that the Trustees expressly delegated authority to NEB pursuant to Section 13.5(h) to assert claims in accordance with ESOP § 11.7, D. 20 ¶ 10, which requires that any delegation of the Trustees' authority be memorialized in a written instrument. D. 20-1 at 37 ( providing that "[t]he Trustees may allocate their responsibilities among themselves in any reasonable manner and may delegate any of their responsibilities . . . to any other person or persons in a written instrument specifying such allocation or delegation").

To the extent that the claims against him, including but not limited to Count I, allege a "mistake," Miller contends that such allegations must be pled with particularity as required under Federal Rule of Civil Procedure 9(b); see U.S. ex rel. Gagne v. City of Worcester, 565 F.3d 40, 45 (1st Cir. 2009). Rule 9(b) requires that a party alleging fraud or mistake, "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The rationale

underlying Rule 9(b) is "to place the defendants on notice and enable them to prepare meaningful responses," "to preclude the use of a groundless fraud claim as a pretext to discovering a wrong or as a 'strike suit,'" and to "to safeguard defendants from frivolous charges which might damage their reputations." Lycos, Inc. v. Internet Venture Works, Inc., No. 02-cv-11383-RWZ, 2003 WL 21146661, at *2 (D. Mass. May 19, 2003) (quoting New England Data Servs. v. Becher, 829 F.2d 286, 289 (1st Cir.1987)).  Here, NEB alleges that it—not Miller—made a mistake by overpaying Miller in the amount of $164,580.17.  D. 20 ¶ 32.  There is no mistake alleged as to Miller, but rather, that Miller, now on notice of NEB's mistake, improperly retains the overpayment. Id. ¶ 46.  Such allegations do not align with the purpose of Rule 9(b), which is to provide a defendant sufficient notice of claimed mistake or fraud so that he may adequately respond.  See Palace v. Merrill Lynch, Pierce, Fenner & Smith, Inc., No. 80-cv-1831-T, 1981 WL 1411, at *2 (D. Mass. Aug. 3, 1981) (holding that complaint fails to specify the "alleged misrepresentations made by defendant," thereby failing to "provide defendant a reasonable opportunity to frame a meaningful response").

Even assuming that Rule 9(b) applies here, the amended complaint puts Miller on notice of the who (NEB), what (overpayment), why (error in allowing his deferral) and when (2019) of the mistake that led to the overpayment, which Miller has allegedly improperly retained in violation of the Plan and his fiduciary duty. D. 20 ¶¶ 1, 27, 31-32; see Lycos, Inc., 2003 WL 21146661, at *2 (noting that Rule 9(b) "requires 'specification of the time, place, and content of an alleged false representation, but not the circumstances or evidence from which fraudulent intent could be inferred'") (internal citation omitted).  That is, NEB's amended complaint alleges that Miller received a distribution that was inaccurately calculated, allegedly due to Miller failing to take his distribution when required, resulting in the overpayment.  Barthelmes v. Kimberly-

9

Clark Corp., No. 13-cv-30164-MGM, 2015 WL 1431156, at *17 (D. Mass. Mar. 27, 2015) (noting that Rule 9(b) "is designed "to apprise the defendant of fraudulent claims and of the acts that form the basis for the claim"). NEB's factual allegations, with respect to the overpayment and its alleged impact on plan participants, suffices to claim that a concrete, particularized injury in fact occurred when the overpayment was taken from the shared Plan's assets, that the injury is traceable to that removal and that the injury would be redressed were the funds to be returned. NEB has also sufficiently alleged that it is authorized to bring this lawsuit on behalf of plan participants and has provided sufficiently detailed allegations to put Miller on notice of NEB's claims. Accordingly, the Court denies the motion to dismiss with respect to Count I.

### 2.     Breach of Fiduciary Duty (Count II)

NEB also alleges that Miller, by retaining the Plan's funds, breached his fiduciary duty. To plead breach of fiduciary duty under ERISA, a plaintiff must allege that (1) the defendant is a plan fiduciary, (2) the defendant breached its fiduciary duty, and (3) the breach resulted in losses to the plan. See 29 U.S.C. § 1109. "ERISA . . . defines 'fiduciary' not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan." Mertens v. Hewitt Assocs., 508 U.S. 248, 262 (1993) (citing 29 U.S.C. § 1002(21)(A)) (emphasis in original). "The key determinant of whether a person qualifies as a functional fiduciary is whether that person exercises discretionary authority in respect to, or meaningful control over, an ERISA plan, its administration, or its assets." Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 18 (1st Cir. 1998). Here, NEB has not alleged that Miller "exercised discretionary authority in respect to, or meaningful control over, an ERISA plan or its administration." Feeney Bros. Excavation LLC v. Morgan Stanley & Co. LLC, No. 18-cv-12313-LTS, 2020 WL 2527851, at *5 (D. Mass. May 18, 2020). NEB cites, however, several courts that have held a defendant "[b]ecame a plan fiduciary

10

because [he or] she retained control over Plan assets [he or] she was not entitled to." Alcatel-Lucent USA Inc. v. Borlabi, No. 13-cv-4543, 2016 WL 3406227, at *3 (D.N.J. June 16, 2016) (concluding that the plaintiffs had pled facts sufficient to establish that the defendant was a plan fiduciary and that "by failing to return the erroneous overpayment and instead us[e] it for her own benefit," breached her fiduciary duty); see Chao v. Day, 436 F.3d 234, 237 (D.C. Cir. 2006) (holding that despite the defendant's argument that he "did not exercise any discretion over the plan's assets," the language of 29 U.S.C. § 1002 solely requires that a person "must simply exercise 'any authority or control' over the management or disposition of assets for the individual to be a fiduciary).

Here, Miller contends that he could not have breached any fiduciary duty because he is not a plan fiduciary. NEB, however, has argued persuasively that Miller became a plan fiduciary when he retained and continued to retain control over Plan assets to which he was not entitled. D. 20 ¶¶ 14-40, 56-57. See Borlabi, 2016 WL 3406227, at *3 (noting that "[i]n withholding the funds, Defendant continues to obstruct the [pension plan's] access to and use of the funds it overpaid to her"). Absent a contrary decision from the First Circuit, the Court finds the reasoning of the courts cited above persuasive that the plain language of 29 U.S.C. § 1002(21)(A) encompasses those who knowingly and unlawfully retain plan assets. See 29 U.S.C. § 1002(21)(A) (defining a plan fiduciary to include anyone who "exercises any authority or control respecting management or disposition of [plan] assets"). Accordingly, NEB has alleged sufficient facts to support its claim that Miller is a fiduciary and may be personally liable to reimburse the plan for the overpayment. The Court also concludes that NEB has alleged sufficient facts to support its claim that Miller breached said fiduciary duty by failing to return the overpayment and

11

that the breach resulted in losses to the Plan. Accordingly, the Court denies the motion to dismiss as to Count II.

### 3. *Unjust Enrichment (Count III)*

NEB claims Miller has been unjustly enriched by the overpayment. Miller contends that such a claim is preempted under ERISA, which preempts "any and all State laws insofar as they may now or hereafter relate to an employee benefit plan." 29 U.S.C. § 1144(a). A "cause of action 'relates to' an ERISA plan when a court must evaluate or interpret the terms of the ERISA-regulated plan to determine liability under the state law cause of action." Joyce v. John Hancock Fin. Servs., Inc., 462 F. Supp. 2d 192, 211 (D. Mass. 2006) (quoting Hampers v. W.R. Grace Co., Inc., 202 F.3d 44, 52 (1st Cir. 2000)). The First Circuit has held that ERISA preempts all state-law claims—including claims for unjust enrichment—that relate to an ERISA plan. Id. While NEB claims its unjust enrichment claim is pursuant to federal common law, this is likewise not permissible. Metro. Life Ins. Co. v. Socia, 16 F. Supp. 2d 66, 71 (D. Mass. 1998) (holding that no federal common law remedy of unjust enrichment exists to recover overpayments made under ERISA plan). Rather, "'ERISA's express remedies are a signal to courts not to create additional remedies of their own.'" Id. (quoting Turner v. Fallon Cmty. Health Plan, Inc., 127 F.3d 196, 199 (1st Cir. 1997)). Accordingly, NEB cannot pursue a claim for unjust enrichment to recover overpayments under the Plan. The Court allows the motion to dismiss as to Count III.

## B.   **Preliminary Injunction**

To obtain a preliminary injunction, a plaintiff must show: "(1) a substantial likelihood of success on the merits; (2) a significant risk of irreparable harm if the injunction is withheld; (3) a favorable balance of hardships, and (4) a fit (or lack of friction) between the injunction and the public interest." Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003) (citation

omitted). The Court may accept as true "well-pleaded allegations [in the complaint] and uncontroverted affidavits," Rohm & Haas Elec. Materials, LLC v. Elec. Circuits, 759 F. Supp. 2d 110, 114, n.2 (D. Mass. 2010) (quoting Elrod v. Burns, 427 U.S. 347, 350, n.1 (1976)), but when "courts are faced with affidavits at odds and must make a credibility determination between them, courts generally do not issue a preliminary injunction, but rather leave the issue for a jury to resolve." Rohm & Haas, 759 F. Supp. 2d at 125, n.107; see Spencer Cos., Inc. v. Armonk Indus., Inc., 489 F.2d 704, 707 (1st Cir. 1973) (affirming trial court's denial of a preliminary injunction when a "major factual dispute" existed regarding the materiality of any misrepresentations and finding that the district court "was within its discretion to conclude that there was uncertainty whether [the plaintiff] would ever prevail on the merits").

*1. NEB Has Shown a Likelihood of Success on the Merits*

Although the Court considers all factors of the preliminary injunction analysis, "[t]he *sine qua non* of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that [it] is likely to succeed in [its] quest, the remaining factors become matters of idle curiosity." New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002); see Boathouse Grp., Inc. v. TigerLogic Corp., 777 F. Supp. 2d 243, 248 (D. Mass. 2011) (explaining that "[l]ikelihood of success on the merits is the critical factor in the analysis and, accordingly, a strong likelihood of success may overcome a 'somewhat less' showing of another element").

Here, it is not in dispute that Miller received an overpayment from NEB that he then retained. 29 U.S. § 1132(a)(3) authorizes fiduciaries to obtain "other appropriate equitable relief (i) to redress . . . violations [of the plan] or (ii) to enforce any provisions of this title or the terms of the plan[.]" An action in equity pursuant to § 1132(a)(3) is a means to recover funds or property

that can be traced to a defendant's possession, belongs in good conscience to the plaintiff, and has not been disputed. Great-W. Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 213 (2002) (noting that "a plaintiff could seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession"). Without any dispute that Miller currently possesses the Plan's funds and refused to return the overpayment once notified, NEB is, at minimum, likely to prevail on its equitable claim to recoup the overpayment (Count I).

### 2. *Irreparable Harm, Balance of Harms and Public Interest*

Although "[l]ikelihood of success is the main bearing wall of the four-factor framework," Ross-Simons, 102 F.3d at 16, both of the first two factors, likelihood of success and irreparable harm, "are the most important and, in most cases, 'irreparable harm constitutes a necessary threshold showing for an award of preliminary injunctive relief.'" Gonzalez-Droz v. Gonzalez-Colon, 573 F.3d 75, 79 (1st Cir. 2009) (quoting Charlesbank Equity Fund II v. Blinds To Go Inc., 370 F.3d 151, 162). NEB argues that it will suffer irreparable harm if an injunction is not issued, as Miller may transfer or dissipate the subject funds while the case is pending. D. 22 at 13. Irreparable harm typically exists where a party has no adequate remedy at law. Charlesbank Equity Fund II, 370 F.3d at 162; Interco, Inc. v. First Nat'l Bank of Boston, 560 F.2d 480, 485 (1st Cir. 1977). While the possibility of monetary injury ordinarily does not constitute irreparable harm, "[a] plaintiff, nevertheless can establish irreparable injury by showing that without equitable relief there is a substantial probability 'that upon final resolution of the action, the parties cannot be returned to the positions they previously occupied.'" Micro Networks Corp. v. HIG Hightec, Inc., 188 F. Supp. 2d 18, 22 (D. Mass. 2002) (quoting Brenntag Int'l Chemicals,

14

Inc. v. Bank of India, 175 F.3d 245, 249 (2d Cir.1999)). "Other Circuits have recognized the propriety of entering a preliminary injunction in cases where assets necessary to satisfy a future judgment were about to be placed beyond the reach of the judicial system." Id. The First Circuit has "recognized the propriety of a preliminary injunction where the relevant funds or assets in which the party has an equitable interest are in danger of depletion and dissipation." Id.

While most cases principally concern defendants facing insolvency, the "courts' primary effort is to preserve a damages remedy and to "freeze the status quo pending [a] final determination . . ." Id. (quoting Teradyne, Inc. v. Mostek Corp., 797 F.2d 43, 52 (1st Cir.1986)). Here, NEB requests an injunction on Miller's overpayment, in the amount of $164,580.17, to prevent dissipation of the funds and to preserve the status quo. The Court concludes that to deny this injunction is to risk the loss of the overpayment while the litigation remains pending, particularly given Miller's declaration of homestead filing on January 23, 2020, D. 20 ¶ 35, (which, as NEB contends, suggests an attempt by Miller to protect his residence from being a replacement asset for the overpayment funds), and his retirement from employment in 2017. Considering the comparative hardships, NEB has demonstrated that it may suffer a harm in the future if the injunction is not granted and the funds are dissipated, leaving NEB with no additional remedy. Without any potential harms alleged by Miller, the balance of harms tips in favor of NEB, as does the public interest given the concern about preserving funds that have been diverted from the Plan assets, which exist for the benefit of the other 336 Plan participants. Accordingly, the Court grants NEB's motion for preliminary injunction. In the Court's discretion, given the facts and circumstances discussed above, the Court determines that no security is warranted under Fed. R. Civ. P. 65(c). See Good Charcoal Inc. v. The Ranch-T, LLC, 15-cv-00528-JDL, 2015 WL 9581739, at *2 (D. Me. Dec. 30, 2015).

## VI.    Conclusion

For the above reasons, the Court ALLOWS NEB's motions for preliminary injunction, D. 21, and DENIES Miller's motion to dismiss as to Counts I and II and ALLOWS Miller's motion to dismiss as to Count III, D. 24.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge