**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

NEW ENGLAND BIOLABS, INC.,

*Plaintiff and Counterclaim Defendant,*

v.

RALPH T. MILLER,

*Defendant and Counterclaim Plaintiff*

RALPH T. MILLER,

*Third Party Plaintiff,*

v.

COMMITTEE OF NEW ENGLAND BIOLABS, INC. EMPLOYEES' STOCK OWNERSHIP PLAN, PERSONAL REPRESENTATIVE OF DONALD COMB, JAMES V. ELLARD, RICHARD IRELAND, and BRIAN TINGER,

*Third Party Defendants,*

and

NEW ENGLAND BIOLABS, INC. EMPLOYEE STOCK OWNERSHIP PLAN & TRUST,

*Nominal Defendant*

Case No. 1:20-cv-11234-RGS

**MEMORANDUM IN SUPPORT OF CLASS COUNSEL'S UNOPPOSED MOTION FOR REIMBURSEMENT OF LITIGATION EXPENSES**

## INTRODUCTION

Under First Circuit law, Class Counsel are entitled under Rule 23(h) to reimbursement of the reasonable expenses from a common fund that Class Counsel incurred in generating it. Class Counsel seeks reimbursement of the following litigation expenses from the Settlement Fund: (1) $20,318.67 for non-expert expenses related to the litigation of the Class's claim (excepting settlement notice and administration expenses); (2) $100,000 of expert-related expenses; and (3) $5,000.00 for expenses related to notice and administration of the Settlement for the Class.

## BACKGROUND

### I. Factual Background

Miller worked for NEB for 17 years until he retired on September 29, 2017. ECF No. 124 at ¶ 1 ("ACC"). During his employment, he participated and was vested in the New England Biolabs, Inc. Employees' Stock Ownership Plan & Trust (the "Plan"). *Id*. Since 2013, the Plan's assets (and the participants' accounts) have consisted primarily of NEB stock, stock in Cell Signaling Technology, Inc. ("CST"), and mutual funds. *Id*. at ¶ 31. Throughout Miller's participation in the Plan, the summary plan descriptions ("SPDs") issued by NEB for the Plan consistently stated that NEB had an obligation to repurchase "Company Stock" upon a participant's termination and defined "Company Stock" to include CST stock. *Id*. at ¶ 102. Count I alleges that was a misrepresentation: under the terms of the Plan, NEB had no obligation to repurchase CST stock. *Id*. at ¶ 103. The annual valuations of CST stock which were used by the Plan's fiduciaries to calculate the dollar value of the stock in were based never considered the existence of such a repurchase obligation—which would have had the effect of making CST stock more liquid and thus more valuable. Likewise, the SPDs also misrepresented the date on which CST stock was valued. The 2003 SPD defined the valuation date for such stock as September 30 of each year. *Id*. at ¶ 97. But in fact, the stock was being valued as of December 31

each year. *Id*. at ¶ 101. And while the 2019 SPD stated that the valuation date for CST stock was December 31 of each year, this misstated the terms of the Plan Document it purported to summarize, which still provided for a valuation date of September 30. *Id*. at ¶ 100.

Miller's shares of NEB and CST stock were liquidated and funds in the amount of $783,823.39 were ascribed to his account. Miller took a distribution and rolled those funds over to an individual retirement account.

## II. Procedural History

In January 2020, the Plan Administrator advised Miller that the Plan fiduciaries claimed for the first time that the Plan had purportedly overpaid him by approximately $164,580 (but not did not explain how they had calculated that amount). *Id*. at ¶ 76. NEB asserted that, as Plan Administrator, it had "overlooked" that Miller was older than 65 when he retired—and thus, under the terms of the Plan, ought to have been cashed out of the Plan upon retirement at stock values as of the end of the preceding Plan year. NEB claimed that the Plan had "mistakenly overpaid" Miller in the amount of $164,580.17 through an "administrative oversight," and that Miller was only entitled to the value of his company stock as of September 2016. NEB sued Miller seeking the return of $164,580.17 and NEB asserted that the Plan had overpaid him in benefits. ECF No. 1. Miller brought counterclaims and third-party claims against NEB and other fiduciaries of the Plan: Brian Tinger and the trustees and members of the administrative committee of the Plan – Richard Ireland, James V. Ellard, and the late Donald Comb (together with NEB, the "NEB Parties"). ECF Nos. 59, 73. The parties litigated cross motions to dismiss and a motion by Miller to further amend his pleadings. ECF Nos. 24, 45, 78, 79, 102. In the summer of 2021, Class Counsel engaged a consulting expert in business valuation to review valuation reports for CST and NEB stock that the NEB Parties had produced. The allegations of Miller's Amended Counterclaim and its first count, the Class claim, were based on consultation

with this expert. ECF No. 191-2 ¶ 8. The only surviving claim on behalf of the putative Class following these motions was Count I of the Amended Counterclaim. ACC ¶¶ 87-109. Miller retained individual claims against NEB under ERISA for inaccurate disclosures about his ability to remain in the Plan after retirement, *id*. ¶¶ 110-17, for breach of fiduciary duty for its failure to monitor the Plan's other fiduciaries, *id*. ¶¶ 118-24, and for unlawful retaliation. *Id*. ¶¶ 125-31. Miller also retained claims against the Third Party Defendants for breach of fiduciary duty and retaliation. ECF No. 73 at ¶¶ 104-27. And NEB retained its claim against Miller for his alleged overpayment by the Plan. ECF No. 53 at ¶¶ 41-54.

Miller and Class Counsel engaged in significant discovery. Miller served 35 RFPs, four nonparty subpoenas, and 27 interrogatories in this case, collecting over 4,700 pages of responsive documents from the Counterclaim Defendant, Third Party Defendants, and nonparties. ECF No. 182 at ¶ 2. Class Counsel engaged an eDiscovery vendor to facilitate storage, review, and analysis of these materials. ECF No. 191-2 ¶ 7. Over the course of October and November of 2021, Class Counsel took all four depositions allowed by the Court: the depositions of Third Party Defendants Tinger and Ellard as well as those of Jeffrey Dunn (who was responsible for the annual valuations of NEB stock) and Robert Kamanitz (who was responsible for the annual valuations of CST stock). ECF No. 191-2 at ¶ 2. Miller sought leave to take one deposition beyond the four allotted by the Court's operative scheduling and discovery order: the deposition of Third-Party Defendant Richard Ireland. ECF No. 140.

One of the subpoenas served by Class Counsel seeking discovery in support of the Class claim was directed to non-party Principal Life Insurance Co., from whom Class Counsel sought data and communications related to Count I. Barton Decl. Ex. A. But on November 2, 2021, Principal filed a motion to quash that subpoena. ECF No. 191-2 ¶ 11. Class Counsel was

required to engage Shindler, Anderson, Goplerud & Weese, P.C., as Iowa counsel to appear *pro hac vice* in the Southern District of Iowa and litigate that motion. *Id*.

Shortly before mediation, on November 26, 2021, Miller moved for class certification, which the Court denied without prejudice to maintain the status quo pending mediation. ECF Nos. 144, 146. Consistent with the deadline in the Scheduling Order, Class Counsel disclosed the final report of their valuation expert to the NEB Parties on December 3, 2021. ECF No. 191-2 ¶ 8.

The parties engaged in mediation and extended negotiations, with the first settlement conference beginning on December 13, 2021, and the last occurring October 14, 2022. ECF No. 180-2 at ¶ 5. These protracted and hard-fought negotiations culminated in a term sheet on July 1, 2022, and a final Class Action Settlement Agreement on October 21, 2022. *Id*. The parties were unable to reach terms on the issue of attorneys fees. The Settlement Agreement thus provides that Class Counsel will seek their fees from NEB, separately from the Settlement fund. ECF reserving that issue to be decided by the Court. ECF No. 180-3 at § VII(3). The NEB Parties agreed that Class Counsel would be entitled to seek from the Settlement Fund: "(1) non-expert expenses related to the litigation of the Class's claim; (2) up to $100,000 of expert-related expenses; and (3) expenses related to notice and administration of this Settlement for the Class." *Id*. at § VII(2).

The Court certified the Class and granted preliminary approval of the Settlement on October 26, 2022. ECF No. 185. The Settlement Administrator recommended by Class Counsel and appointed by the Court has effected notice to the Class. ECF No. 190 Ex. 1.

The Court previously denied Plaintiff's motion for litigation expenses without prejudice, stating that "Counsel has not provided enough information for the court to determine whether

reimbursement of requested expenses is appropriate. The court accordingly denies the motion, without prejudice to renew upon submission of a more fulsome explanation (with an itemized breakdown) of the specific expenses for which reimbursement is sought, as substantiated by receipts, invoices, and other documentation." ECF No. 192. Accordingly, Class Counsel undertook a second round of review of claimed expenses and have submitted itemized breakdowns of each expenses for which reimbursement is sought and have produced receipts, invoices, or other documentation as appropriate. Barton Decl. Exs. 1-16; Feigenbaum Decl. Exs. A-G.

## ARGUMENT

"[L]awyers whose efforts succeed in creating a common fund for the benefit of a class are entitled not only to reasonable fees, but also to recover from the fund, as a general matter, expenses, reasonable in amount, that were necessary to bring the action to a climax." *In re Fidelity/Micron Sec. Litig.*, 167 F.3d 735, 737 (1st. Cir. 1999). Here, Class Counsel have incurred more than $275,000.00 in expenses to date in the litigation of this case. Barton Decl. ¶ 3; Feigenbaum Decl. ¶ 5. But on this motion, Class Counsel seeks reimbursement for only $125,318.67. This represents: (1) non-expert expenses related to the litigation of the Class's claim; (2) $100,000.00 of expert-related expenses; and (3) $5.000.00 in expenses related to notice and administration of the Settlement for the Class. These expenses were and are reasonable in amount and necessary to bring this case to a favorable conclusion for the Class. They are also expenses of the kinds routinely authorized for reimbursement in class action cases in this Circuit, and do not include expenses related solely to the prosecution of Miller's individual claims or to defending against NEB's claims.

## I. Class Counsel's request for reimbursement of expenses related to the litigation of the Class's claims is reasonable and appropriate.

Class Counsel seek reimbursement of expenses necessarily incurred in the course of this litigation and ordinarily charged to paying clients. These consist of filing fees, courier and postage costs, court reporter fees, copying charges, process server fees, costs of maintaining electronic databases for the purpose of managing e-discovery, expenses for travel to and from hearings and depositions, costs of accessing electronic databases such as PACER and WestLaw, and expert fees. Barton Decl. Ex. 1; Feigenbaum Decl. ¶ 4. These are expenses that courts typically reimburse to class counsel from settlement funds. *Bezdek v. Vibram USA Inc.*, 79 F.Supp.3d 324, 352 (D. Mass. 2015) (approving expenses for "mediation, legal research, filing fees, consultation with experts, photocopying, and travel to hearings, depositions, and meetings"), *aff'd*, 809 F.3d 78 (1st Cir. 2015); *Hill v. State St. Corp.*, No. CIV.A. 09-12146-GAO, 2015 WL 127728, at *21 (D. Mass. Jan. 8, 2015) (approving expenses for "costs of retaining several experts, creating and maintaining an electronic database for review of documents, and conducting online legal and factual research, as well as for court fees, court reporters, out-of-town travel, and copying costs"). Prior to submitting these expenses for reimbursement, Class Counsel reviewed their expenses to remove duplicative or inaccurate entries and to ensure that the expenses submitted are those that "are necessarily incurred in litigation of this type and routinely charged to clients billed by the hour." *Id.*; ECF No. 191-2 ¶¶ 3-4, 6; ECF No. 191-4 ¶¶6-8. Class Counsel identified and separately categorized expenses related solely to the litigation of Miller's individual claims or his defense against NEB's claims. Barton Decl. ¶ 4. Most significantly, Class Counsel (1) removed travel and court reporting expenses incurred in connection with the deposition of Jeffrey Dunn, who was responsible for the annual valuations of NEB stock and (2) are only seeking a portion (less than 40%) of the

expert expenses, as this work addressed the valuation of both NEB stock and CST stock and only the latter was relevant to Count I. Id. While Class Counsel incurred more than $251,000.00 in expert expenses, Class Counsel is only seeking reimbursement from the Class settlement of $100,000. Similarly, Class Counsel has not included more than $2,000 in other non-expert expenses. Instead, the non-expert expenses for which Class Counsel seeks reimbursement from the Class Settlement Fund total $20,318.67 (excepting settlement notice and administration expenses).

The single largest category of expenses incurred by Class Counsel consists of the cost of an expert. Expert expenses are among those which courts will pay from a Settlement Fund where they are reasonable and necessary. *Bezdek*, 79 F.Supp.3d at 352; *Hill*, 2015 WL 127728, at *21. A valuation expert is a necessity in an ERISA case challenging the value of privately held stock. *Pfeifer v. Wawa, Inc.*, No. CV 16-497, 2018 WL 4203880, at *8 (E.D. Pa. Aug. 31, 2018) (holding valuation issues in ESOP case would involve "quintessential battle of the experts"). Class Counsel engaged experts to analyze the valuation reports, assist with developing the theories that underly the counterclaim (including Count I), assist with the examination of valuation person that the Plan fiduciaries had relied on to determine the fair market value of CST stock and also to issue an expert opinion – in accordance with the deadline set by the Court. ECF No. 191-2 ¶ 8. At trial, to recover on behalf of the Class Miller would have had to advance an accurate valuation of CST stock correcting for the errors alleged in Count I of the Amended Counterclaim. *See* ACC ¶¶ 87-109. That showing would have been required to establish both the amount of monetary relief to which the Class was entitled and that Miller and that Class had suffered actual injuries (and thus had standing to pursue their claims). ECF No. 191-2 ¶ 8.

Ultimately, the expert's report was not only useful, but essential in negotiating the settlement of Count I.

In the experience of Class Counsel, the hourly rate of $425 for Plaintiff's expert is reasonable and competitive with experts offering similar services. *Id.* ¶ 9. The total amount of $250,000.00 in this case—as well as $100,000.00 for which Class Counsel seeks to be reimbursed—was reasonable given that a final expert report was provided and Plaintiff's expert provided substantial consulting support in connection with Class Counsel's depositions of fact witnesses as well as the drafting of the counterclaim itself. *Id*. In the experience of Class Counsel litigating other, similar ERISA breach of fiduciary duty claims related to stock valuation, the cost of engaging a valuation expert generally represents the largest out of pocket expense in such a case and often exceeds these amounts for delivery of an expert report. *Id.* ¶ 6. Class Counsel seeks reimbursement of only $100,000.00 of these expenses on this motion, which represents a fair approximation of the costs attributable to work valuing CST stock and consulting on litigation issues related to the value of CST stock and thus to the claims of the Class. *Id.* ¶ 7.[1]

Class Counsel also seek reimbursement as a litigation expense of the amount owed incurred by Class Counsel to hire local counsel in Iowa on an hourly (i.e non-contingency basis) to defend the motion to quash filed by non-party Principal Life Insurance Group, the third party administrator of the Plan. Plaintiff's subpoena to Principal sought communications with the Class and with Plan fiduciaries, data regarding members of the Class and their investments through the Plan. Barton Decl. Ex. A at 3-6. Principal filed a motion to quash the subpoena in the

[1] The balance is attributable to work valuing NEB stock and is thus related to the defense of Miller against NEB and the litigation of Miller's individual claims against NEB for his underpayment for his stock. Class Counsel do not seek those expenses here (but reserve the right to seek those expenses from NEB on a further motion).

Southern District of Iowa, and Class Counsel was obliged to engaged Iowa counsel in order to litigate that discovery dispute. ECF No. 191-2 ¶ 11. Shindler, Anderson, Goplerud & Weese, P.C., Miller's Iowa counsel, billed Class Counsel for 7.2 hours of work at hourly rates of $400 for an associate and $625.00, for an aggregate expense of $3,915.00. *Id*. Iowa counsel, unlike Class Counsel in this case, was engaged on an hourly basis and their fee was not contingent on the result of the underlying litigation. *Id*. The amount for Shindler is a fixed, out-of-pocket cost that is properly treated and paid as a reimbursable expense necessary for the litigation of the Class's claims rather than a contingent attorney's fee. *Guevoura Fund Ltd. v. Sillerman*, 1:15-CV-07192-CM, 2019 WL 6889901, at *22 (S.D.N.Y. Dec. 18, 2019) (awarding to class counsel as expense the retainer paid to bankruptcy counsel on behalf of the class); *In re Quintus Securities Litig.*, C-00-4263 VRW, 2006 WL 3507936, at *4 (N.D. Cal. Dec. 5, 2006) (approving class counsel's request for expense reimbursement that included fees and expenses paid to bankruptcy counsel).

Because the expenses incurred by Class Counsel in achieving a common fund for the class were reasonable and necessary, the Court should grant reimbursement of them from the Settlement Fund.

**II. The Settlement Administrator's expenses is reasonable.**

Class Counsel also seeks approval of $5,000 for expenses related to settlement administration – including distribution of class notice, the maintenance of a settlement website, and other settlement administration expenses (but in no event more than actual expenses incurred). Courts routinely authorize the reimbursement of these expenses from a settlement fund. *E.g. Murray v. Grocery Delivery E-Servs. USA Inc.*, No. 19-CV-12608-WGY, 2021 WL 5410505, at *3 (D. Mass. Oct. 15, 2021); *Loestrin 24 Fe Antitrust Litig.*, No. 1:13-MD-2472-S-PAS, 2020 WL 5203323, at *6 & n.16 (D.R.I. Sept. 1, 2020); *Venegas v. Glob. Aircraft Serv.*,

*Inc.*, No. 2:14-CV-249-NT, 2017 WL 2730025, at *3 (D. Me. June 26, 2017). Here, these expenses consists of $5,000 for the services of Phoenix Class Action Administration Solutions (corresponding to their not-to-exceed fee commitment). These expenses are all reasonable and in line with the customary amounts charged for similar services, and Phoenix was appointed by the Court as Settlement Administrator only after a competitive bidding process in which it submitted the lowest-priced bid for settlement administration services. ECF No. 180-2 at ¶ 7; ECF No. 185 at ¶ 18.

## CONCLUSION

For the foregoing reasons, Class Counsel's Motion for Reimbursement of Litigation Expenses should be granted.

Dated: January 9, 2023

Respectfully submitted,

*/s/ Colin M. Downes*

R. Joseph Barton
*Admitted Pro Hac Vice*
Colin M. Downes
*Admitted Pro Hac Vice*
Barton & Downes LLP
1633 Connecticut Ave. Street NW, Ste. 200
Washington, DC 20009
Tel: (202) 734-7046
Email: jbarton@bartondownes.com
Email: colin@bartondownes.com

Jonathan M. Feigenbaum, Esq.
BBO# 546686
184 High Street, Suite 503
Boston, MA 02110
Tel. No.: (617) 357-9700
Fax No.: (617) 227-2843
Email: jonathan@erisaattorneys.com

Lauren Godles Milgroom
BBO# 698743
BLOCK & LEVITON LLP
260 Franklin Street, Suite 1860
Boston, MA 02110
Tel: (617) 398-5600
Email: lauren@blockleviton.com

*Counsel for Defendant, Counterclaim Plaintiff, & Third Party Plaintiff Ralph T. Miller*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing this day, January 9, 2023.

*/s/ Colin M. Downes*
Colin M. Downes