**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| NEW ENGLAND BIOLABS, INC., | |
|     *Plaintiff and Counterclaim Defendant*, | Case No. 1:20-cv-11234-RGS |
|     v. | |
| RALPH T. MILLER, | |
|     *Defendant and Counterclaim Plaintiff* | |
| RALPH T. MILLER | |
|     *Third Party Plaintiff*, | |
|     v. | |
| COMMITTEE OF NEW ENGLAND BIOLABS, INC. EMPLOYEES' STOCK OWNERSHIP PLAN, PERSONAL REPRESENTATIVE OF DONALD COMB, JAMES V. ELLARD, RICHARD IRELAND, and BRIAN TINGER, | **AGREEMENT REGARDING PAYMENT OF ATTORNEYS' FEES & EXPENSES AND AS TO DISTRIBUTION OF THE CLASS SETTLEMENT FUND** |
|     *Third Party Defendants* | |
| and | |
| NEW ENGLAND BIOLABS, INC. EMPLOYEE STOCK OWNERSHIP PLAN & TRUST | |
|     *Nominal Defendant* | |

This Agreement ("Agreement") is made and entered into by and between Ralph Miller ("Miller") on behalf of himself and the Class, Class Counsel, and Miller's Counsel (i.e. Barton & Downes LLP and Jonathan Feigenbaum) on the one part, and New England BioLabs, Inc. ("NEB"), James Ellard ("Ellard"), Richard Ireland ("Ireland"), Brian Tinger ("Tinger"), the Personal Representative of Donald Comb ("Comb Representative"), on the other part (NEB, Ellard, Ireland, Tinger and Comb Representative are collectively referred to as the "NEB Parties"), but, as provided in Section V below, will not become effective unless the United States District Court for the District of Massachusetts either approves the agreement in accordance with Rule 23(e) and/or Rule 23(h) of the Federal Rules of Civil Procedure or determines that no approval is required and that Order becomes Non-Appealable. All capitalized terms herein have the meanings afforded them by that Settlement Agreement between Miller, on behalf of himself and the Class, and the NEB Parties dated October 21, 2022 (the "Class Settlement Agreement"), except as otherwise defined herein.

## RECITALS

A.     **WHEREAS**, Miller was a participant in the New England BioLabs Employee Stock Ownership Plan & Trust;

B.     **WHEREAS**, on or about June 26, 2020, NEB filed an action captioned *New England Biolabs, Inc. v. Ralph T. Miller*, No. 1:20-CV-11234, in the United States District Court for the District of Massachusetts asserting claims against Miller under ERISA and for unjust enrichment alleging that Miller wrongfully received an overpayment of funds from the Plan;

C.     **WHEREAS**, Miller, both in his individual capacity and on behalf of a putative class of Plan participants, asserted counterclaims in the Action under ERISA;

D.      **WHEREAS**, Miller, both in his individual capacity and on behalf of a putative

class of Plan participants, also asserted third party claims in the Action against Ellard, Ireland,

Tinger, and the Comb Representative alleging ERISA violations;

E.      **WHEREAS**, following motions practice in the District Court, the only claim

asserted by Miller on behalf of a class that was allowed to proceed was Count I of Miller's

Amended Counterclaim (as defined in the Class Settlement Agreement as the "Class Claim");

F.      **WHEREAS,** following mediation conducted with the assistance of a United

States Magistrate Judge serving as a mediator, Miller, and the NEB Parties entered into (1) the

Class Settlement Agreement which settled the Class Claim on behalf of a class, subject to

approval by the Court pursuant to Rule 23 of the FRCP, but did not settle claims of Miller, the

Class or Class Counsel for attorneys' fees, litigation expenses or costs; and (2) a separate

settlement agreement ("Individual Settlement") that settled the claims that Miller and the NEB

Parties had asserted against each other (other than the Class Claim), but did not settle any claim

by Miller or Miller's Counsel for attorneys' fees, litigation expenses or costs, which Individual

Settlement was conditioned upon the Class Settlement Agreement being finally approved by the

Court and becoming final and no longer subject to appeal;

G.      **WHEREAS**, the Class Settlement Agreement provided that Class Counsel could

seek an award of certain Class Claim litigation costs and expenses from the Class Settlement

Fund for which any amount would be subject to approval by the Court, but neither the Class

Settlement Agreement nor the Individual Settlement settled or resolved all claims for litigation

costs and expenses or any claim for attorneys' fees that Miller, in his individual capacity or on

behalf of the Class, Class Counsel or Miller's Counsel might assert against NEB under ERISA or

otherwise in connection with the Action, but rather left such matters for resolution by the Court on separate motion by Miller, Class Counsel or Miller's Counsel and/or the Class;

H.     **WHEREAS**, the District Court certified the Class Claim on behalf of the Class, appointed R. Joseph Barton and Jonathan Feigenbaum as Co-Lead Class Counsel and granted preliminary approval of the Class Settlement Agreement on October 26, 2022.

I.     **WHEREAS,** on January 13 and 30, 2023, the District Court entered orders granting in part and denying in part, motions filed by Miller and Class Counsel seeking an award of litigation expenses from the Class Settlement Fund (to which the NEB Parties asserted no objection as agreed in the Class Settlement Agreement) and awarded a certain amount in reimbursement of expenses to be paid to Class Counsel out of the Class Settlement Fund (the "Class Settlement Expense Award').

J.     **WHEREAS,** on February 21, 2023, the District Court entered an order denying in its entirety a motion filed by Miller seeking an award of attorneys' fees and litigation costs and expenses against NEB;

K.     **WHEREAS,** on March 1, 2023,the District Court entered an order granting Final Approval of the Class Settlement Agreement, in which Paragraph 11 of the Final Approval Order provided that the Court retained exclusive jurisdiction as to all matters relating to (a) implementation of the Class Settlement Agreement; (b) disposition of the Settlement Fund and distributions from the Settlement Fund; (c) any claim or motion by Miller or Class Counsel for attorneys' fees or litigation expenses and (d) enforcement and administration of the Class Settlement Agreement.

L.      **WHEREAS,** on March 21, 2023, the District Court entered Final Judgment, but retained exclusive jurisdiction as to all matters relating to (a) implementation of the Class Settlement Agreement; (b) disposition of the Settlement Fund and distributions from the Settlement Fund; (c) enforcement and administration of the Class Settlement Agreement.

M.      **WHEREAS,** on March 22, 2023, Miller (and Miller's Counsel and Class Counsel) filed a Notice of Appeal to the United States Court of Appeals for the First Circuit ("First Circuit") appealing (1) the February 21, 2023 order denying the motion seeking an award against NEB of attorneys' fees and litigation costs and expenses; and (2) the orders of January 13 and 30, 2023 granting in part, and denying in part the motions seeking an award of litigation fees and expenses from the Class Settlement Fund ("Appeal"), but no one, including Miller, Class Counsel and Miller's Counsel (or any class member or other party) appealed from the March 1, 2023 Final Approval Order;

N.      **WHEREAS,** the Parties agree that Class Counsel is authorized to transfer the Settlement Fund proceeds from the Escrow to the Trust consistent with Section III.2 and Section IV.4 of the Class Settlement Agreement and that the Net Settlement Fund can be distributed to Class Members pursuant to Section IV.4 and IV.5 of the Class Settlement Agreement as modified by Section IV of this Agreement,

O.      **WHEREAS,** following the filing of the Appeal, Miller, Miller's Counsel, and Class Counsel, and the NEB Parties participated in a mediation conducted by the Hon. Patrick King (Ret.) pursuant to, and as required by, Rule 33 of the Rules of the First Circuit;

P.      **WHEREAS,** with the assistance of Judge King in such mediation process and based on his recommendation, Miller, Miller's Counsel, Class Counsel and the NEB Parties have reached a full and complete settlement and compromise of any and all issues pertaining to any

5

award of attorneys' fees, litigation costs and expenses sought by Miller, the Class and/or Miller's Counsel or Class Counsel in connection with this Action and have fully and completely resolved all issues involved in the Appeal, but nothing in this Agreement is intended to compromise, reduce or limit the amount previously awarded by the Court in the Class Settlement Expense Award;

Q.    **WHEREAS,** Miller's current counsel Barton & Downes, LLP represents and Miller's former counsel Block & Leviton LLP has separately represented by letter dated August 4, 2023  that effective as of January 1, 2023, Miller terminated his representation by Block & Leviton LLP (with whom his counsel R. Joseph Barton and Colin Downes were previously affiliated), then retained Barton & Downes LLP as his counsel in this Action, and Barton & Downes LLP and Block & Leviton LLP have a written agreement that addresses the division of any of attorneys' fees and expenses recovered in this Action; and

R.    **WHEREAS,** Block & Leviton LLP also has represented in such letter dated August 4, 2023 that its attorneys' fees and expenses in this Action shall be based on, limited to, and come from the amount paid by NEB under this Agreement and that it shall not seek any additional attorneys' fees or expenses from the NEB parties and their insurers beyond such amount in connection with the Action, and the NEB parties have relied on the representations in such letter in entering into this Agreement.

**SETTLEMENT TERMS**

**NOW**, **THEREFORE**, in consideration of the mutual agreements herein, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree upon the terms and conditions set forth below:

## I.        PAYMENT OF ATTORNEYS' FEES & REIMBURSEMENT OF EXPENSES

1.        **Payment of Amount Into An Escrow Account.**  Within 14 business days after this Agreement is fully executed, NEB will pay or cause its insurer to pay the sum of $295,000.00 in attorneys' fees and expenses into an escrow account established by Class Counsel, for which an escrow agent will act pursuant to the terms of an escrow agreement (the "Fees & Expense Fund").

2.        **Management of the Attorneys' Fees & Expense Fund**.  Until the time that (a) the Court enters an Order approving this Agreement (or an Order determining no approval is necessary) and the Appeal is dismissed or (b) the Agreement is terminated in accordance with this Agreement, the monies in the escrow account shall be held for the benefit of Class Counsel and shall be invested in a federally insured, interest-bearing money market deposit account that has no possibility of loss of principal or penalties due to early redemption. After the time that the Court enters an Order approving this Agreement (or an Order determining no approval is necessary) and the Appeal has been dismissed, Class Counsel will have the sole right and duty to manage the Fees & Expense Fund. This Fund is intended to be a "qualified settlement fund" for federal income tax purposes under Treas.Reg. § 1.468B-1 at the earliest date possible. All interest on the amounts deposited in the escrow account or any portion thereof shall be accumulated and added to the Fees & Expense Fund. At no time will the NEB Parties have any duty, responsibility or authority to hold, manage, or invest any portion of the Fees & Expense Fund.

3.        **Payment of Any Amount Not Approved By the Court**. To the extent that the Court enters an order regarding approval of this Agreement such that the amount to be paid to Class Counsel does not exhaust the amount of the Fees & Expense Fund and this Agreement is

not terminated, any remaining amounts in the Fees & Expense Fund will become part of the Class Settlement Fund.

4.        **Timing & Conditions of Disbursement of the Fees & Expense Fund**. Once (a) the Court has entered an Order approving this Agreement (or an Order determining no approval is necessary); (b) any such Order becomes Final and Non-Appealable; and (c) the Appeal has been dismissed, the amount held in the Fees & Expense Fund, including any interest accumulated in the Fund, shall be distributed to Class Counsel. If such pre-conditions are not satisfied, amounts in the Fees & Expense Fund will be returned to NEB as set forth in Section V.4.

5.        **Full & Complete Satisfaction.** Upon distribution of the Fee & Expense Fund to Class Counsel, the $295,000 payment made by NEB pursuant to this Section 1 shall be in full and complete satisfaction, discharge and release of any and all claims that Miller, Miller's Counsel, Class Counsel or the Class have or may have against the NEB Parties (or their insurers) for attorneys' fees, litigation costs or expenses under ERISA or otherwise arising from or in connection with the Action, whether already incurred or incurred in the future, including, but not limited to, any attorneys' fees, costs or expenses incurred in connection with, or related to the Appeal or the negotiation, drafting or implementation of this Agreement or the Class Settlement Agreement; except that claims to enforce this Agreement, the Individual Settlement Agreement or the Class Settlement Agreement are not covered by this Agreement. Miller, Miller's Counsel and Class Counsel further covenant, warrant and agree that, upon distribution of the Fees & Expense Fund to Class Counsel, the NEB Parties and their insurers shall have no additional liability to Miller, Miller's Counsel, Class Counsel or the Class for attorneys' fees, litigation costs or expenses for or in connection with this Action, whether already incurred or incurred in

the future, and further that they will not seek to impose upon, or recover from the NEB Parties or their insurers, any additional fees, costs or expenses for or in connection with this Action; however, claims to enforce this Agreement, the Individual Settlement Agreement or the Class Settlement Agreement are not covered by this Agreement.

6.    **Prior Class Settlement Expense Award:** Nothing in this Agreement is intended to nor should be construed to nor does it reduce, compromise or otherwise affect the amount previously awarded by the Court (in its orders dated January 13 and 30, 2023) as reimbursement of expenses to be paid to Class Counsel out of the Class Settlement Fund (referred to above as the "Class Settlement Expense Award'). The amount to be paid by NEB pursuant to this Agreement is in addition to the amount previously awarded as the Class Settlement Expense Award.

## II.    PROCEEDINGS AT THE FIRST CIRCUIT

1.    **Filing to Allow Consideration of this Agreement by the District Court.**   To the extent necessary, promptly after this Agreement is fully executed, Miller, Class Counsel, Miller's Counsel and the NEB Parties will file a joint motion or stipulation with the First Circuit that advises the First Circuit of this Agreement and, as necessary, requests the First Circuit to remand the case to the District Court for the limited purpose of having the District Court consider and/or approve this Agreement pursuant to Rule 23 of the FRCP.  Any such motion or stipulation will provide that it will be without prejudice and as necessary will allow Miller, Miller's Counsel and Class Counsel to resume or reinstate the Appeal if this Agreement is not approved or the Agreement is terminated.

2.    **Filing in the First Circuit After Order by the District Court**. In the event that the District Court approves this Agreement or determines that no approval is necessary and if

this Agreement has not been terminated (and after the District Court's Order has become Non-Appealable), Miller, Miller's Counsel and Class Counsel will promptly dismiss their Appeal (to the extent it has not already been dismissed) and will not seek to reinstate the Appeal. Nothing precludes Miller, Miller's Counsel or Class Counsel from appealing from the Court's Order on this Agreement or reinstating the Appeal if this Agreement is terminated.

## III.   DISCLOSURE TO THE COURT AND THE CLASS

1.      **Disclosure to the Court:**  After this agreement is fully executed, Miller and Class Counsel will file this Agreement with the Court and file a motion requesting that the Court either approve this Agreement under Rule 23(h) or determine that approval of this Agreement is not necessary under Rule 23, FRCP.  The NEB Parties (and their counsel) will not take any position on whether any such approval is necessary.

2.      **Disclosure to the Class**.  Shortly after this Agreement is filed with the Court, Class Counsel will have the Settlement Administrator post this Agreement on the Settlement website.

3.      **Additional Notice to the Class:**  As the Class Notice previously advised the Class about the amount of expenses that would be sought from the Class Settlement Fund and that the attorneys would be paid separately from the Class Settlement Fund, no Class Member objected and this Agreement is consistent with the information in the previously issued Class Notice, Miller, Class Counsel, and the NEB Parties believe no additional notice to the Class is required under Rule 23.  To the extent that the Court requires additional notice to the Class concerning the terms of this Agreement, Class Counsel will be entitled to seek reasonable expenses in connection with sending such Class Notice (or related administration) to be paid out of the Class Settlement Fund. NEB will not oppose any such motion by Class Counsel to have

the reasonable costs to send any additional Class Notice (or related administration) to be paid

from the Class Settlement Fund.

## IV.   DISTRIBUTION OF CLASS SETTLEMENT FUND

1.      **Initial Distribution of the Class Settlement Fund.** To the extent not already

provided, within 5 days after this Agreement is fully executed, NEB will provide Class Counsel

with the necessary wire instructions for Class Counsel to accomplish the transfer of the Net

Settlement Proceeds (other than any holdback, such as for taxes, class notice or any expenses to

be paid out of the Settlement Fund that are in dispute) to the Plan. Section IV.5(a) of the Class

Settlement Agreement is modified to provide that NEB will cause the Plan Administrator to send

each Class Member an Election Distribution Packet within 14 days of the later of the date on

which: (a) the Plan Administrator receives directions from Class Counsel regarding the minimum

allocation of the Net Settlement proceeds for each Class Member; or (b) this Agreement is fully-

executed.  Section IV.5(a) of the Class Settlement Agreement is further modified to provide that

the Plan Administrator will make a distribution (or rollover) to a Class Member within 31 days

of the later of the following: (a) the receipt by the Plan Administrator of the Net Settlement

Proceeds for the Class Settlement Fund and direction from Class Counsel regarding the

allocation of proceeds for each Class Member consistent with the Plan of Allocation; (b) the Plan

Administrator's receipt of the distribution or rollover instructions from that Class Member; or (c)

the date on which the Court has entered an Order on this Agreement so long as that Order has

become Non-Appealable. Nothing in this Paragraph is intended to modify any provision in the

Class Settlement Agreement other than Section IV.4 and IV.5(a) of the Class Settlement

Agreement.

2.       **Circumstances of any Second Distribution to Class Members.** Class Counsel and the NEB Parties do not anticipate a second distribution to Class Members of the Class Settlement Fund proceeds and anticipate that any monies in the Class Settlement Fund after the Initial Distribution will be distributed pursuant to Paragraph 6 of the Plan of Allocation. A second distribution to Class Members will only be made if the amount remaining in the Settlement Fund after the first distribution sufficiently exceeds NEB's reasonable out-of-pocket expenses for any second distribution to make it economically reasonable (after deducting NEB's expenses for the second distribution) to distribute the remaining monies in the Settlement Fund to the Class. In all other circumstances, any monies in the Class Settlement Fund after the Initial Distribution will be distributed pursuant to Paragraph 6 of the Plan of Allocation.

3.       **Payment of Expenses in the Event of Any Second Distribution to Class Members from the Class Settlement Fund.** To the extent that a second distribution from the Class Settlement Fund to Class Members would be economically reasonable as set forth in Section IV.2,  NEB will be entitled to seek approval by the Court to have their reasonable additional out-of-pocket expenses incurred in making a second distribution from the Class Settlement Fund to Class Members paid out of the then-remaining Class Settlement Fund notwithstanding any provision of the Class Settlement Agreement to the contrary. Miller and Class Counsel will not oppose any motion by NEB to have its reasonable costs for such second distribution to be paid from the Class Settlement Fund.

4.       **Methods of Paying Any Second Distribution of the Class Settlement Fund to Class Members**.  In the event that there is a second Distribution to Class Members, and the Court approves an award of reasonable additional out-of-pocket expenses incurred by NEB in connection with such second distribution, such second distribution will be paid through the Plan

as contemplated by and consistent with Section IV of the Class Settlement Agreement. If, however, the Court does not approve an award of reasonable additional out-of-pocket expenses incurred by NEB in connection with such second distribution, any second distribution will be paid directly from the Class Settlement Fund to Class Members and not through the Plan (notwithstanding the requirements of Sections IV.4-IV.5 of the Class Settlement Agreement).

## V.      CONDITIONS OF THIS AGREEMENT & RIGHT TO WITHDRAW

1.      **Court Approval.** Each of the following is an express condition of this Agreement: (a) the Court either approves this Agreement or determines that Court approval of this Agreement is not required; (b) any such Order approving this Agreement becomes Final and Non-Appealable; (c) the Court does not require additional Class Notice to be sent to the Class or approves payment of any expense related to Class Notice to be paid out of the Class Settlement Fund; (d) the Court (and any appeals court) allows the full amount in the Fees & Expenses Fund to be paid to Class Counsel and the full amount previously awarded as the Class Settlement Expense Award to be paid to Class Counsel.

2.      **Right to Withdraw**.  In the event that any of the conditions in Section V.1(a)-(d) does not occur, Class Counsel will have the right to withdraw from and void this Agreement by providing written notice to counsel for the NEB Parties within fourteen (14) days after the event prompting the right to terminate ("Termination Notice").

3.      **Effectiveness of Termination Notice.** The Termination Notice will void the Settlement Agreement only if the Settling Parties fail to reach a written agreement within thirty (30) days of the Termination Notice to modify this Agreement to resolve the issue and have not agreed to further extend the time to reach agreement to modify this Agreement.

4.      **Effect of Withdrawal.** In the event that a Termination Notice becomes effective before any Order of the Court becomes Non-Appealable: (a) the monies in the Fees & Expense Escrow Account, including any interest or earnings accrued while in escrow, but less any amount paid or owing for taxes or expenses incurred while in escrow (including any amounts necessary to prepare tax returns or monies paid or owing to the Escrow Agent) will be returned to the NEB Parties; (b) the NEB Parties will not be released from the claims otherwise released in this Agreement, and (c) this Agreement will be void *ab initio* and the Parties' positions, rights, and responsibilities will be deemed to have reverted to their respective status in this Action as of May 23, 2023, and, the Parties will proceed in all respects as if this Agreement never existed; except that Section IV will continue to apply and not be affected by any Termination Notice if, but only if, the Court approves Section IV.

## VI.    RELEASES AND COVENANTS NOT TO SUE

1.      **Release and Covenant Not to Sue by Miller, the Class, Class Counsel and Miller's Counsel.**  Effective upon the distribution to Class Counsel of the Fees & Expense Fund, Miller, on his own behalf and on behalf of the Class, Miller's Counsel and Class Counsel, both on their own behalf and in their capacity as Counsel for Miller and the Class, fully and finally release, acquit, and forever discharge the NEB Parties, and each of them as well as their insurers, from any and all claims, causes of action, demands, or liabilities, of any kind or nature, whether at law or in equity, whether known or unknown, whether under state or federal law, for attorneys' fees, litigation costs or expenses, incurred, related to, or arising from or in connection with the Action, whether already incurred or incurred in the future, including, but not limited to any and all such claims incurred or arising in connection with the Appeal or the negotiation, drafting or implementation of this Agreement; however, claims to enforce this Agreement, the

Individual Settlement Agreement or the Class Settlement Agreement are not released by this Agreement. Effective upon such distribution, Miller, Class Counsel and Miller's Counsel further covenant and agree not to sue, prosecute, continue or bring any action or proceeding against the NEB Parties (or any one of them) or their insurers, concerning or related to any claim for attorneys' fees, litigation costs or expenses, that are released in this Agreement.

2.      **No Admission of Liability.**  The Parties agree and acknowledge that this Agreement is entered into for the sole purpose of resolving contested claims and disputes, and avoiding the substantial costs, expenses and uncertainties associated with such claims and disputes. It is further expressly agreed and acknowledged that neither the negotiation, execution, nor performance of any of the terms of this Agreement shall constitute or be construed as an admission by any Party to this Agreement of any liability, fault, or wrongdoing, or any fact or indication that any of the claims or charges made by any of the Parties against each other has any merit or lacks any merit, and further, that the Parties, and each of them, expressly deny any wrongdoing, violation of law, or liability whatsoever.  This Agreement shall not be construed or interpreted as an assumption of any liability by any Party.

VII.    **MISCELLANEOUS PROVISIONS**

1.      **Continued Cooperation**:  The Parties agree to reasonably and in good faith cooperate and to execute any and all supplementary documents and to take all additional actions that may be necessary or appropriate to give full force to the basic terms and intent of this Agreement and which are not inconsistent with its terms.

2.      **Binding Effect**: This Agreement, and the releases provided herein, shall be binding on and inure to the benefit of, each of the Parties and each of their respective (as applicable) successors, assigns, heirs, trustees, executors, beneficiaries, administrators, parent,

affiliated and subsidiary entities and divisions, employees, officers, and directors, and as to the Trustee of the Plan, as to any subsequent fiduciaries of the Plan, provided however, that no assignment by any Party will operate to relieve such Party of its obligations hereunder.

3.      **Governing Law and Venue**:  This Agreement will be interpreted, construed and governed by Massachusetts law without regard to that jurisdiction's conflicts of law principles. Any and all disputes related to this Agreement that are not satisfactorily resolved by the Parties (or their Counsel) will be submitted to the Court for final resolution (subject to any right to appeal). The Parties (and their Counsel) agree to submit to the jurisdiction of the Court any disputes related to the implementation and enforcement of this Agreement (subject to any right to appeal). To the extent that the Court declines or refuses to exercise jurisdiction as to any such claim (and such determination is not reversed on appeal), then any suit brought in connection with this Agreement shall be brought solely in the Courts of the Commonwealth of Massachusetts.

4.      **Continuing Jurisdiction.**  Nothing in this Agreement is intended to or shall be construed to change the provisions in Paragraph 11 of the Final Approval Order on the Class Settlement Agreement whereby the Court retained exclusive jurisdiction as to certain matters, among other things related to any claim or motion by Miller or Class Counsel for attorneys' fees or litigation expenses. The Parties (and their Counsel) agree to submit to the jurisdiction of the Court and will be bound by the terms of this Agreement, including, without limitation, disputes related to implementing and enforcing the Settlement embodied in this Settlement Agreement. The proposed Order on this Agreement will provide that the Court will have continuing jurisdiction over this Agreement, including any disputes among Miller's present or former counsel regarding division of fees or expenses.

5**.**      **Interpretation**:  This Agreement shall be interpreted as if jointly drafted by the Parties, and no provision shall be interpreted against any Party because such provision was drafted by that Party.  In the event of a dispute regarding the meaning of this Agreement, or any term of this Agreement, drafts of the Agreement and communications concerning such drafts shall be inadmissible for any purpose including, without limitation, to aid in the interpretation of this Agreement.

6.      **Severability**: If any portion or portions of the Agreement is held by a court of competent jurisdiction to conflict with any federal, state, or local law, and as a result such portion or portions are declared to be invalid and of no force and effect in such jurisdiction, all remaining provisions of the Agreement shall otherwise remain in full force and effect and be construed as if such invalid portion or portions had not been included.

7.      **Modification:** This Agreement may be amended or modified only by written instrument signed by Class Counsel on behalf of Miller and the Class or on behalf of Miller's Counsel and by the NEB Party or NEB Parties (or their respective successors in interest) who is affected by the modification, and the amendment or modification will be effective once the fully-executed amendment or modification is delivered to all affected parties.

8.      **Representations**: This Agreement, along with the Class Settlement Agreement and the Individual Settlement Agreement, constitutes the entire agreement among the Parties and no representations, warranties, or inducements have been made to any Party concerning this Agreement other than the representations, warranties, and covenants contained, or referenced in such documents.

9.      **Enforcement of this Agreement:** In the event that any Party to this Agreement believes that another Party to this Agreement has breached the terms of this Agreement, that

Party will notify counsel for the alleged breaching Party in writing setting forth the nature of the breach and the requested method to cure the breach at least 14 days prior to filing any litigation to enforce the terms of the Agreement. In the event that the allegedly breaching Party fails to cure the alleged breach as set forth in the written notification after 14 days, the other Party may then file an action to enforce the Agreement.

10.   **Counterparts**.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

11.   **Authority:** Each signatory to this Agreement represents that he or she is authorized to enter into this Agreement on behalf of the respective Parties he or she represents. Should any non-signing Party ever contend that they did not authorize their counsel to sign this Agreement on their behalf, counsel and their law firms shall defend, indemnify, and hold harmless the other Parties with respect to any and all claims, demands, actions, causes of action, or losses related to such contention.

12.   **Expenses Related to this Agreement:** Except as provided in this Agreement or by prior Orders of the Court, each Party to this Agreement will bear their own attorneys' fees, expenses and costs incurred in, and related to the mediation, negotiations, and implementation of this Agreement.

IN WITNESS WHEREOF, the Parties have approved and executed this Agreement on the date set forth opposite their respective signatures.

Dated: August 14, 2023

_____

R. Joseph Barton
Admitted *Pro Hac Vice*
Colin M. Downes
Admitted *Pro Hac Vice*
Barton & Downes LLP
1633 Connecticut Ave. NW Ste. 200
Washington, DC 20009
Tel: (202) 734-7046
jbarton@bartondownes.com
colin@bartondownes.com

Jonathan M. Feigenbaum, Esq.
BBO No. 546686
184 High Street
Suite 503
Boston, MA 02110
Tel. No.: (617) 357-9700
Fax No.: (617) 227-2843
jonathan@erisaattorneys.com

*Counsel for Defendant & Third Party
Plaintiff Miller & the Class*

Lauren Godles Milgroom
BBO# 698743
BLOCK & LEVITON LLP
260 Franklin Street, Suite 1860
Boston, MA 02110
Tel: (617) 398-5600
lauren@blockleviton.com

*Prior Counsel for Miller Who Still
Appears on the Docket*

Dated: August 16, 2023

_____

Paul J. Ondrasik, Jr.
Admitted *Pro Hac Vice*
Eric Serron
Admitted *Pro Hac Vice*
Steptoe & Johnson LLP
1330 Connecticut Ave. N.W.
Washington, DC 20036
Tel: 202-429-3000
pondrasik@steptoe.com
eserron@steptoe.com

*Counsel for Plaintiff NEB and Third Party
Defendants (i.e. the "NEB Parties")*